IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD E. MEADOWS, JR.<br>and AMANDA MEADOWS,<br>husband and wife, ) ) ) ) | |
| Plaintiffs, ) | Civil Action No. 02-2062 |
| ) | |
| v. ) | Magistrate Judge Amy Reynolds Hay |
| ) | |
| ANCHOR LONGWALL AND REBUILD, INC.,<br>a West Virginia Corporation, ) ) ) | |
| Defendant. ) | |

| | |
|---|---|
| ANCHOR LONGWALL AND REBUILD, INC.,<br>a West Virginia Corporation, ) ) ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LEWIS-GOETZ AND COMPANY, INC.,<br>successor in interest of<br>Gooding & Shields Rubber Company,<br>SYSTEM STECKO, a Division of<br>Dayco Europe, Ltd, ) ) ) ) ) ) | |
| Third-Party Defendants. ) | |

| | |
|---|---|
| LEWIS-GOETZ AND COMPANY, INC.<br>successor in interest of<br>Gooding & Shields Rubber Company, ) ) ) | |
| Cross-Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| ANCHOR LONGWALL AND REBUILD, INC,<br>a West Virginia Corporation, ) ) ) | |
| Cross-Defendant. ) | |

OPINION AND ORDER

HAY, Magistrate Judge

      Plaintiffs, Donald E. Meadows, Jr. and Amanda Meadows, filed a complaint on November 29, 2002, bringing claims against Anchor Longwall and Rebuild, Inc. ("Anchor Longwall") for strict liability (Count I), negligence (Count II), breach of warranty (Count III), and emotional distress and loss of consortium (Count IV), after Mr. Meadows was injured while pressurizing a mine shield against the roof of the Maple Creek Mine in Bentley, Pennsylvania, where he was employed. Plaintiffs allege that a fitting located in the shut off valve, which had been replaced by Anchor Longwall during a refurbishing project, malfunctioned and pulled loose from the valve assembly housing striking Mr. Meadows on the right side of his face. As a result, Mr. Meadows lost his right eye.[1] Anchor Longwall filed a third-party complaint seeking contribution and indemnification against Lewis-Goetz and Company, Inc. ("Lewis-Goetz"), the successor-in-interest to Gooding & Shields Rubber Co., which allegedly supplied the valves in question, and Systems Stecko ("Stecko"), which is purported to have designed and manufactured the valves. In addition, Stecko has brought a counterclaim against Anchor Longwall and cross-claims against Lewis-Goetz, and Lewis-Goetz has filed cross-claims against Anchor Longwall in which contribution and indemnification have also been sought.[2]

      Anchor Longwall filed a partial motion for summary judgment on October 17, 2005, in which it argued that it is entitled to judgment on plaintiffs' strict liability claim brought

---

[1] Complaint ¶¶ 9, 10.

[2] See Dkt. Nos. 36, 37, 40, 57.

at Count I because Anchor Longwall did not sell or supply a product but merely provided a service which is not subject to strict liability. The Court agreed and in an Opinion and Order filed April 17, 2006, granted judgment in favor of Anchor Longwall at Count I of the complaint.[3]

Stecko, Anchor Longwall and Lewis-Goetz have now filed separate motions in which they seek summary judgment on the claims remaining. Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial* ... or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991),

---

[3] See Dkt. Nos. 70, 93.

quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Instantly, defendants argue that they are entitled to judgment in their favor because, due to a break in the chain of custody, there is no evidence of record to support a finding that the valve in plaintiffs' possession is the valve that caused Mr. Meadows' injuries and that, absent such evidence, they have been deprived of their right to examine the offending valve. Indeed, it appears undisputed that while counsel for the Maple Creek Mine has attested to the fact that he received what purports to be the valve in question from the Maple Creek Mine offices sometime after the incident, there is no testimony or other evidence of record to indicate who removed the valve from the mine or how it wound up in the office of Mr. Marcavitch, who was the Safety Director at the mine at the time of the incident, or who specifically sent it to Maple Creek Mine's counsel.

To support their arguments defendants rely principally on Roselli v. General Electric Co., 410 Pa. Super. 223, 599 A.2d 685 (1991), for the proposition that whenever important evidence has been lost or destroyed thereby depriving the defendant of an opportunity to inspect it, summary judgment is appropriate. In the Court's view, however, not only does Roselli not sweep so broadly but it is inapplicable to the instant case.

In Roselli, the plaintiff was injured when a coffee carafe shattered in her hand spraying boiling coffee onto her leg and abdomen. The broken pieces of the carafe were subsequently lost by the plaintiff and her attorney before the defendant's experts were able to inspect them. Defendant moved for summary judgment which the trial court granted finding that the defendant had been deprived of the most direct means of countering the plaintiff's allegations and because defendant was precluded from determining the identity of the carafe's manufacturer.

4

Id., 599 A.2d at 227.  In affirming the trial court, the Superior Court of Pennsylvania reasoned that:

> To permit claims of defective products where a purchaser of the product has simply thrown it away after an accident, would both encourage false claims and make legitimate defense of valid claims more difficult. It would put a plaintiff (or plaintiff's attorney) in the position of deciding whether the availability of the item would help or hurt his or her case. Where producing the product for defense inspection would weaken rather than strengthen a case, we unfortunately are obliged to conclude that some plaintiffs and attorneys would be unable to resist the temptation to have the product disappear.

Roselli, 599 A.2d at 687-688.  Citing to this language, defendants liken the fact that the chain of custody has been broken in this case to the acknowledged destruction of evidence in Roselli, and conclude that under Roselli summary judgment is warranted.  We disagree.

First, as previously found by this Court and the Pennsylvania Superior Court, Roselli does not stand for the broad proposition that whenever a key piece of evidence is lost or destroyed summary judgment is warranted.  See Schultz v. Barko Hydraulics, Inc., 832 F. Supp. 142, 145 (W.D. Pa. 1993) ( Rejecting defendant's argument that because plaintiff lost the allegedly defective product that it is *ipso facto* entitled to summary judgment.); Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d 489, 495 (Pa. Super. 1997), allocatur denied, 556 Pa. 676, 727 A.2d 131 (1998) (Finding no controlling Pennsylvania authority that *mandates* summary judgment whenever the plaintiff fails to preserve the defective product.) (emphasis in original); O'Donnell v. Big Yank, Inc., 696 A.2d 846, 848 (Pa. Super.), allocatur denied, 555 Pa. 731, 725 A.2d 182 (1997) ("Roselli does not hold that in all cases where evidence has been lost or destroyed prior to inspection, a plaintiff cannot pursue its claim.").

Secondly, Roselli concerns the spoilation of evidence which, under the substantive law of Pennsylvania and federal law of evidence, permits a court to sanction a party that destroys evidence knowing that it is relevant to the litigation. Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76, 78 (3d Cir. 1994); Gordner v. Dynetics Corp., 862 F. Supp. 1303, 1307 (M.D. Pa. 1994). See also Donohoe v. American Isuzu Motors, Inc., 155 F.R.D. 515, 519-20 (M.D. Pa. 1994) (Finding that under federal law the imposition of sanctions for spoilation of evidence is governed by federal evidentiary law.) Indeed, as this Court has previously found, "[f]or the spoilation inference to arise, it is essential both that the evidence in question be within the party's control and that there has been an actual suppression or withholding of the evidence." Parkinson v. Guidant Corp., 315 F. Supp. 2d 760, 763 (W.D. Pa. 2004), citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995).

Here, however, defendants have not argued or pointed to any evidence from which it could be concluded that the real valve was lost or destroyed through any fault of plaintiff and, thus, the spoilation doctrine does not apply. Id. See Gordner v. Dynetics Corp., 862 F. Supp. at 1307-08 (Finding no basis to sanction plaintiff under a spoilation theory when no conduct on her part caused the destruction of the allegedly defective product.); Dansak v. Cameron Coca-Cola Bottling Co., 703 A.2d at 494 (Finding no basis to extend Roselli to cases where the plaintiff was not at fault for disposing of the allegedly defective product.); Long v. Yingling, 700 A.2d 508, 513 (Pa. Super. 1997), allocatur denied, 555 Pa. 731, 725 A.2d 182 (1998) (Finding that the public policy interests that the theory of spoilation was designed to effectuate were not at issue where the appellant was neither the owner nor in control of the allegedly defective product.).

More importantly, however, unlike in Roselli, plaintiffs have produced what they

contend is the offending valve. While there may have been a break in the chain of custody it seems an unwarranted leap to conclude that the valve has, in fact, been destroyed and that as a consequence defendants are entitled to summary judgment. Rather, as argued by plaintiffs, a break in the chain of custody merely draws the authenticity of the valve into question.[4]

Indeed, in Bruther v. General Electric Co., 818 F. Supp. 1238 (S.D. Ind. 1993) ("Bruther"), the plaintiff was electrocuted when the glass envelope of the light bulb he was changing separated from the base exposing his hand to an electrical current causing permanent and disabling injuries. The plaintiff brought suit against the manufacturer of the bulb under theories of strict liability, negligence, breach of warranty and failure to warn. After the accident, however, like in the instant case, no one at the plaintiff's place of employment took care to safeguard the bulb after it was removed from the socket creating some doubt as to whether the broken bulb subsequently found in a cabinet next to where the accident occurred was the actual bulb that caused the plaintiff's injuries. Accordingly, the defendant moved for summary judgment, not under a spoilation theory, but under the theory that because of the gap in the chain of custody, the plaintiff was unable to authenticate the bulb. The Court, applying the authentication standard set forth in Fed. R.Evid. 901(a),[5] found that the evidence of record was

---

[4]The Court notes here that to the extent plaintiffs have also suggested that the identity of the valve in their possession is irrelevant because they have alleged a design defect the record is to the contrary. Review of the complaint demonstrates that plaintiffs have alleged only that the valve in question malfunctioned and not that it suffered from a design defect. Complaint ¶¶ 9, 10, 14, 16. Because plaintiffs may not amend their complaint at this juncture or in this manner, plaintiffs argument is unavailing. See Pennsylvania v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988) (A complaint may not be amended by the briefs in opposition to a motion to dismiss.)

[5]Rule 901(a) provides that: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

sufficient to permit the inference that the bulb in question was the bulb that caused the plaintiff's injuries and that the ultimate determination was properly left to the jury. Id., 818 F. Supp. at 1240-41. In so finding, the Court rejected the defendant's argument that because of the nondescript nature of the bulb, chain of custody requirements must be followed to the letter to satisfy Rule 901(a), opining that "any discrepancies in the chain of custody go to the weight of the evidence and not its admissibility," and that it was within the province of the jury to evaluate the significance of the plaintiff's inability to account for the bulb following the accident. Id., 818 F. Supp. at 1241, quoting U.S. v. L'Allier, 838 F.2d 234, 242 (7th Cir. 1988).

Here, like in Bruther, plaintiffs have in custody what they contend in the offending product. The question therefore is whether there is sufficient evidence of record from which a fact finder could reasonably conclude, notwithstanding the lapse in the chain of custody, that the valve in plaintiffs' possession is in fact the valve that caused Mr. Meadows' injuries and not, as defendants suggest, whether plaintiffs should be sanctioned for losing or destroying the valve.[6] Indeed, defendants' spoilation argument assumes that plaintiffs cannot authenticate the

---

[6] Although Bruther, is not binding on this Court it is nevertheless instructive as it is factually indistinguishable from the case at bar and is consistent with other cases where the chain of custody, rather than the spoilation of evidence, is at issue. See United States v. Reilly, 33 F.3d 1396, 1405 (3d Cir. 1994) ("[O]nce the Court finds that evidence has been introduced sufficient to permit a reasonable juror to find that the matter in question is what its proponent claims, a sufficient foundation for introduction of evidence has been laid."); United States v. Grant, 967 F.2d 81, 83 (2d Cir. 1992), cert. denied, 507 U.S. 924 (1993) (Finding that defendant's attack on the chain of custody goes to the weight of the chemist's testimony rather than the admissibility.); United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.), cert. denied, 459 U.S. 874 (1982), quoting United States v. Jackson, 649 F.2d 967 (3d Cir. 1981) (Finding that "[t]he chain of custody rule is but a variation of the principle that real evidence must be authenticated prior to its admission into evidence.... [P]recision in developing the "chain of custody" is not an iron-clad requirement, and the fact of a 'missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect."); Commonwealth v. Alarie, 378 Pa. Super. 11, 17, 547 A.2d

valve in question based solely on the fact that there was a break in the chain of custody and without regard to other evidence that could create an inference of authenticity. It is undisputed, however, that the longwall shield that Mr. Meadows was installing when the incident occurred was one of the shields refurbished by Anchor Longwall and that all of the valves on the refurbished shields were replaced.[7] It also appears undisputed that the replacement valves were Stecko valves, that a Stecko valve caused Mr. Meadows' injuries and that the valve in plaintiffs' custody is one such valve. Further, although it cannot be disputed that no one knows who removed the valve from the mine after the incident, Mr. Marcavitch, the then Safety Director at the mine, testified that during the course of the investigation following the incident he and/or the state and federal inspectors took pictures of a valve that appeared in his office which he understood to be the valve in question.[8] Those photographs along with a valve were subsequently received by D. Scott Newman, Esquire, counsel for the Maple Creek Mine, after he inquired at the mine about the offending valve at the behest of plaintiffs' original counsel. Mr. Newman has attested to the fact that he received a brown envelope which had "Valve, Do Not Open" written on it and was sealed with stickers bearing the name "Hersh Hayden" and the

---

1252, 1255 (1988), allocatur denied, 521 Pa. 616, 557 A.2d 720 (1989) ("A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial."); Smith v. Crouse-Hinds Co., 175 Ind. App. 679, 685, 373 N.E.2d 923, 928 (1978) (Finding that while the evidence did not conclusively establish the authenticity of the metal pin it was sufficient to establish the reasonable probability that it was the pin at issue.)

[7]Anchor Longwall Exh. A: Hill Aff. ¶¶ 6, 8, 11-14; Stecko Exh. 1: Underkoffler Depo., pp. 57, 76.

[8]Stecko Exh. 5: Marcavitch Depo., pp. 24, 26, 28-9.

address of the Maple Creek Mine.[9] The photographs Mr. Newman received depict not only the valve identified as the one that was involved in the accident but the valve being placed into an envelop, the envelope being placed into a FedEx box and the FedEx box addressed to Hersh Hayden at the Maple Creek Mine.[10] Mr. Newman has also attested to the fact that he did not open the envelop but sent it to plaintiffs' attorney at the time, Paul R. Giba, via Triangle Messenger Service.[11] Mr. Giba, in turn, has submitted an affidavit in which he confirms that he received a sealed envelope from Triangle Messenger Service on February 11, 2002, which was marked "Valve, Do Not Open" and sealed with stickers bearing the name of Hersh Hayden and the address of the mine along with five photographs.[12] As well, Mr. Giba has attested to the fact that he maintained custody of the valve until he turned it over to plaintiffs' present counsel, Mr. Schubert, in July of 2005, where it has remained ever since.[13]

       In the Court's view, this evidence is sufficient to permit a jury to infer that the valve in plaintiffs' custody is the same valve that caused Mr. Meadows' injuries thereby satisfying Rule 901(a). Although, to be sure, defendants have submitted evidence of record which establishes lapses in the chain of custody, i.e., the deposition testimony of various employees of the Maple Creek Mine who have testified to the fact that they do not know who removed the valve from the mine following the incident, who may have put it in Mr.

---

[9] Pl. Exh.: Newman Aff. ¶¶ 1-4.

[10] Id. at ¶ 4.

[11] Id. at ¶ 5.

[12] Pl. Exh.: Giba Aff. ¶¶ 1-5.

[13] Id. at ¶ 6; Pl. Exh.: Schubert Aff. ¶¶ 1-4.

Marcavitch's office or how Mr. Hayden may have subsequently gotten a hold of it,[14] that evidence does not render this a spoilation case but, rather, serves only to create an issue of fact regarding the authenticity of the valve. As such, the motions for summary judgment filed by Anchor Longwall and Stecko in this regard are properly denied. Bruther, supra.[15]

      Lewis-Goetz, however, has also argued that it is entitled to summary judgment even if plaintiffs are able to authenticate the valve in their possession because there is no evidence of record to support a finding that it was supplied by Lewis-Goetz. To support its position, Lewis-Goetz has presented evidence, which no one has disputed, that in addition to the 27 hose kits and 3 separate valves that it supplied for the refurbishing project, 12 others were ordered through another company called MMH, Morgantown Machine, Inc. ("Morgantown Machine").[16] Moreover, Chad Underkloffer, shop superintendent, testified that there was no way

---

[14]It appears that Mr. Hayden no longer works at the Maple Creek Mine and, to date, cannot be located. See Plaintiffs' Brief in Opposition to Motions for Summary Judgment of Systems Stecko and Anchor Longwall and Rebuild, Inc., p. 8 [Dkt. No. 83].

[15]The Court notes here that even if the concept of spoilation were relevant, the Court of Appeals for the Third Circuit has held that the proper sanction varies depending on 1) the degree of fault of the party who altered or destroyed the evidence, 2) the degree of prejudice suffered by the opposing party, and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, at the same time, deter such conduct by others in the future. Schmid v. Milwaukee Electric Tool Corp., 13 F.3d at 79. Not only have defendants failed to discussed any of these factors other than to generally plead the inability to inspect the valve, but, as previously discussed, summary judgment is not an appropriate remedy. At the very worst, the appropriate sanction would be to preclude plaintiff from introducing evidence of the defective product. Donohoe v. American Isuzu Motors, Inc., 155 F.R.D. at 520. While summary judgment in some cases may follow because without such evidence the plaintiff is no longer be able to prove his case -- an argument which defendants have not made here -- it is not in and of itself a remedy for the spoilation of evidence. Id.

[16]See Lewis-Goetz Exhs: Donahue Depo., pp. 51-53, 57, 111-13; Anchor Longwall bill of materials, pp. 9-10; Underkloffer Depo., pp. 63, 66.

to distinguish between the valves purchased from Lewis-Goetz and those purchased from Morgantown Machine.[17]  Under these circumstances, it appears that Lewis-Goetz's liability in this matter cannot be established.  See Lee v. Boyle-Midway Household Products, Inc., 792 F. Supp. 1001, 1005 (W.D. Pa. 1992) (Summary judgment granted where it could not be established whether defendant's drain cleaner or a competitor's product caused plaintiff's injuries.); DeWeese v. Anchor Hocking Consumer and Industrial Products Group, 427 Pa. Super. 47, 53-54, 628 A.2d 421, 424 (1993) (Plaintiff's failure to preserve the allegedly defective product precluded him from raising a genuine issue of material fact regarding the identity of its manufacturer or seller.)  Notably, the parties appear to have conceded as much as no one has addressed Lewis-Goetz's argument in this regard, including Stecko, which was the only party that declined to sign the stipulation dismissing Lewis-Goetz from the litigation.[18]  As such, Lewis-Goetz's motion for summary judgment is properly granted.

Finally, Stecko has also argued that it is entitled to summary judgment on the claim for indemnification brought against it by Anchor Longwall in the Third-Party Complaint.  Anchor Longwall has failed to address this issue and, thus, has seemingly conceded that the claim is properly dismissed as well.  The Court agrees.

As argued by Stecko, under Pennsylvania law, indemnity is not a cost sharing mechanism but is a right that inures to a party, who without active fault on his or her part, has been compelled by reason of some legal obligation to pay damages occasioned by the negligence of another and for which that person is only secondarily liable.  In re One Meridan Plaza Fire

---

[17]Underkloffer Depo., p. 63.

[18]See Dkt. No. 72.

Litigation, 820 F. Supp. 1492, 1496 (E.D. Pa. 1993); Sirianni v. Nugent Brothers, Inc., 509 Pa. 564, 571, 506 A.2d 868, 871 (1986) (Finding indemnification "is a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.")  An indemnitee is therefore not entitled to indemnification if he or she has been actively negligent.  In re One Meridan Plaza Fire Litigation, 820 F. Supp. at 1496.

      Here, the only claims remaining against Anchor Longwall sound in negligence. Hence, if Anchor Longwall is found liable to plaintiffs it will be for its own negligent acts and not because of some legal obligation to pay damages occasioned by the negligence of another. Under such circumstances, Anchor Longwall would not be entitled to indemnification and Stecko is, therefore, entitled to summary judgment.

Dated: 28 August, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD E. MEADOWS, JR. <br> and AMANDA MEADOWS, <br> husband and wife, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) | Civil Action No. 02-2062 |
| v. | ) <br> ) | Magistrate Judge Amy Reynolds Hay |
| ANCHOR LONGWALL AND REBUILD, INC., <br> a West Virginia Corporation, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

| | |
|---|---|
| ANCHOR LONGWALL AND REBUILD, INC., <br> a West Virginia Corporation, | ) <br> ) <br> ) |
| Third-Party Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| LEWIS-GOETZ AND COMPANY, INC., <br> successor in interest of <br> Gooding & Shields Rubber Company, <br> SYSTEM STECKO, a Division of <br> Dayco Europe, Ltd, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Third-Party Defendants. | ) |

| | |
|---|---|
| LEWIS-GOETZ AND COMPANY, INC. <br> successor in interest of <br> Gooding & Shields Rubber Company, | ) <br> ) <br> ) <br> ) |
| Cross-Claimant, | ) <br> ) |
| v. | ) <br> ) |
| ANCHOR LONGWALL AND REBUILD, INC, <br> a West Virginia Corporation, | ) <br> ) <br> ) |
| Cross-Defendant. | ) |

ORDER

AND NOW, this 28th day of August, 2006, upon consideration of the motions for summary judgment filed by the parties, IT IS HEREBY ORDERED that the motion for summary judgment filed by Systems Stecko [Dkt. No. 65] is GRANTED as to the indemnification claim brought by Anchor Longwall in the Third-Party Complaint and denied in all other respects; the motion for summary judgment filed by Anchor Longwall and Rebuild, Inc. [Dkt. No. 67] is DENIED; and the motion for summary judgment filed by Lewis-Goetz and Company, Inc. [Dkt. No. 79] is GRANTED.

/s/   Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

cc: Richard J. Schubert, Esquire
Lydon & Schubert
825 Grant Building
Pittsburgh, PA 15219

Kathleen S. McAllister, Esquire
DiBella & Geer, P.C.
312 Boulevard of the Allies
Third Floor
Pittsburgh, PA 15222

Lynn E. Bell, Esquire
Davies, McFarland & Carroll, P.C.
One Gateway Center
10th Floor
Pittsburgh, PA 15222

Stanley A. Winikoff, Esquire
Swartz Campbell LLC
4750 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219